UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| DENISE I. MARSHALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:05-CV-00051 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff, Denise I. Marshall ("Plaintiff"), appeals the denial of her application for Social Security Disability Income Benefits ("DIB"). She challenges the Administrative Law Judge's ("ALJ") finding that she was not disabled within the meaning of Titles II and XVI of the Social Security Act ("Act"). *See* 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff applied for DIB on November 15, 2002, alleging an onset date of July 25, 2001. After her application was denied initially and on reconsideration, Plaintiff requested a *de novo* ALJ hearing. On May 13, 2004, the ALJ held that Plaintiff was not disabled within the meaning of the Act, and Plaintiff requested Appeals Council review. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision under authority of 42 U.S.C. §§ 405(g).

**I.   BACKGROUND**

Plaintiff was forty-six years old at the time of the ALJ's decision and had a tenth grade

education (Tr. 19, 28, 594).  Her past relevant work experience includes employment as an electronics assembler and parts inspector, cashier and retail clerk supervisor (Tr. 19, 28, 594).  Plaintiff stopped working on a full-time basis on July 25, 2001, but provided childcare for a five-year-old child 25 hours per week from August 2002 through mid-February 2003 (Tr. 566-57, 569, 586).  Plaintiff claimed that she could no longer work due to fibromyalgia, right hand tremors, reflex sympathetic dystrophy ("RSD"), asthma, low back pain, and high cholesterol (Tr. 19).

Plaintiff testified that she had a history of RSD affecting her right arm, for which she underwent surgery in December 1995 (Tr. 572).  However, despite therapy, Plaintiff's arm had not gotten better and she continued to experience pain and tremors in that arm (Tr. 572-73).  Plaintiff estimated that she could not lift more than five pounds due to arm pain, and that she could not sit for more than ten minutes, stand more than five minutes, or walk more than ten feet due to leg pain (Tr. 573, 579).  Plaintiff testified she occasionally cooked, washed dishes once a week, did laundry at her parents' home once a month, visited neighbors, drove a car, grocery shopped, and watched television (Tr. 580-82).

The ALJ found that Plaintiff had severe impairments, but that her impairments did not satisfy or equal the criteria of any impairment listed in 20 C.F.R., pt. 404, subpt P, app. 1 (Tr. 29).

**A.     Medical Evidence**

Plaintiff treated with Dr. Sarah Sutton between August 6, 2001, and March 13, 2003.  She saw Dr. Sutton for routine check-ups, medical complaints, and medication refills. During two visits, December 13, 2001 and August 5, 2002, Plaintiff complained of continuing tremors since

1996 associated with RSD.  On examination, Dr. Sutton noted that Plaintiff had "no tremors currently" ( Tr. 465, 467).

On August 31, 2002, Plaintiff saw Dr. Newton for a consultative examination (Tr. 450-53). Plaintiff reported she underwent surgery in 1995 for "tennis elbow" and thereafter developed RSD in her right arm (Tr. 450). Plaintiff complained of right arm pain, loss of use of that arm, and inability to lift anything weighing more than five pounds (Tr. 450). On examination, Plaintiff had decreased (or 2/5) motor strength in her right arm compared to normal (or 5/5) strength in her left arm, and she exhibited whole body tremors with movement or use of her muscles (Tr. 452). Otherwise, Plaintiff had no inflammation, effusion, or swelling in any joints; she had normal ranges of motion in her right wrist and hand; she had no sensory deficits; she had no muscle atrophy or rigidity; her fine finger movements were normal; and she had normal ability to handle small objects and button clothing (Tr. 452). Dr. Newton recommended that Plaintiff follow-up with a neurologist to evaluate her RSD and tremors (Tr. 452-53).

On September 24, 2002, Dr. Crawford, a state agency physician, reviewed the medical record and opined that Plaintiff could frequently and occasionally lift objects weighing up to 10 pounds; stand and/or walk for up to six hours during an eight-hour workday; and sit for up to six hours in an eight-hour workday (Tr. 443).  Dr. Crawford opined that Plaintiff could crawl, crouch, kneel, stoop, balance, and climb ramps/stairs, but could not climb ladders, ropes, or scaffolds (Tr. 444).  Dr. Crawford further opined that Plaintiff had no manipulative limitations with reaching, handling, fingering, or feeling (Tr. 445).

On October 2, 2002, Plaintiff sought emergency room treatment after she slipped and fell on her right arm and hand (Tr. 423). She complained of stiffness and soreness over her right hand

and wrist (Tr. 423). On examination, Plaintiff had no tenderness over her right shoulder, arm, or elbow, but she complained of tenderness in her right forearm, wrist, and hand (Tr. 424). She had no significant swelling, discoloration, or deformity of her right arm and hand; she had a +2 radial pulse; she had full range of motion in her extremities; her grasping strength in her right hand was strong; and she had no sensory deficits (Tr. 423). A right forearm and hand x-ray were negative. (Tr. 423, 432).

Dr. Wenzler, another state agency physician, reviewed the Plaintiff's medical file, and on March 10, 2003, affirmed Dr. Crawford's earlier opinion regarding Plaintiff's ability to work. (Tr. 449).

On a prescription note dated March 13, 2003, Dr. Sutton noted the following: "increasing LE [lower extremity] pain + knee pain. May work max. 8-10/ [hours] a week, sedentary as tolerated" (Tr. 420). An examination by Dr. Sutton on the same day revealed that Plaintiff had some knee crepitus, but had full range of knee motion (Tr. 514). The doctor noted no other examination findings (Tr. 514).

**B.     Vocational Expert Evidence**

Constance Brown, a vocational expert ("VE"), appeared and testified at the hearing. When asked whether jobs existed in the national economy for an hypothetical individual of Plaintiff's age, education, past relevant work experience and residual functional capacity ("RFC"), the VE testified that assuming the hypothetical individuals's specific work restrictions, she would be capable of making a vocational adjustment to other unskilled light and sedentary work existing in significant numbers in the regional economy (Tr. 597). The VE testified such a

4

hypothetical individual in Indiana could do jobs such as: general office clerk, 3,000; stock clerk, 2,100 jobs; traffic clerk, 1,300; assembler, 6,000; and product inspector, 900 jobs.

Plaintiff's attorney asked the VE if the hypothetical person were limited to only eight to 10 hours a week of sedentary work, would she be able to do any jobs. The VE testified that such a hypothetical person would not be able to do any job. When asked about a hypothetical person limited to 25 or 30 hours per week of sedentary work, the VE testified that she would not be able to do any jobs.

**C.    The ALJ's Decision**

The findings of the ALJ were as follows:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through March 3, 2004.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's fibromyalgia, reflex sympathetic dystrophy, and asthma are considered "severe" based on the requirements in Regulations 20 C.F.R. §§ 404.1520(c).

4. The claimant's medically determinable impairments, either singly or in combination, do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the RFC to perform light work as defined in the regulations.

The claimant's limitations in sitting at will for five minutes per hour without leaving the work station. She is able to occasionally squat, stoop, and bend. She should avoid work that requires kneeling, crawling, or climbing ladders, ropes, or scaffolds. She further should avoid working at unprotected heights, and around dangerous moving machinery. The claimant is restricted to work environments relatively free of noxious fumes, gases, respiratory irritants, or extremes of temperature and humidity. In addition, she is limited to work not requiring more than superficial interaction with the general public, co-workers, and supervisors.

7. The claimant is able to return to her past relevant job as an electronics assembler and parts inspector (20 C.F.R. §§ 404.1565).

8. The claimant is a "younger individual between the ages of 45 and 49" (20 C.F.R. §§ 404.1563).

9. The claimant has "a limited tenth grade education" (20 C.F.R. §§ 404.1564).

10. The claimant has no transferable skills from any skilled work previously performed.

11. The claimant has the RFC to perform a significant range of light work (20 C.F.R. §§ 404.1567).

12. Even if the claimant was unable to return to her past relevant job, using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number of unskilled light and sedentary jobs in the national economy that she could perform. Examples of the unskilled light jobs the claimant could perform include general office clerk, of which 3,000 jobs exist in the Indiana economy; stock clerk, of which

6

2,100 jobs exist in the Indiana economy; and traffic clerk, of which 1,300 jobs exist in the Indiana economy. Examples of the unskilled, sedentary jobs the claimant could perform include assembler, of which 6,000 jobs exist in the Indiana economy; and product inspector, of which 900 jobs exist in the Indiana economy.

13. The claimant is able to perform her past relevant job. Even if the claimant was unable to return to her past job, she still retains the capacity for other jobs existing in significant numbers in the national economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(g)).

## II.   STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one. If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court. 42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). The court must examine the evidence that favors the claimant as well as the evidence that supports the Commissioner's conclusion. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Where conflicting evidence allows reasonable minds to differ as to whether a

claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

### III.   DISCUSSION

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Under section 423(c)(1)(B)(1), it is well-established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schwiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert. denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok*, 152 F.3d at 640; *Meredith v. Bowen*, 833 F.2d 659 (7th Cir. 1987); *Owens v. Heckler*, 770 F.2d 1276; 1280 (5th Cir. 1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not

8

prior to or subsequent to the dates in question." *Jeralds*, 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F. Supp. 651, 654 (N.D. Ind.1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that she was disabled during the period in which he was insured. *Jeralds*, 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir. 1976).

The claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

> (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford*, 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford*, 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that the claimant is not disabled." *Id.* The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

The Plaintiff disagrees with the ALJ's finding that she was not disabled on or before

9

March 31, 2003, the date her insured status expired, because she could perform a significant number of light and sedentary jobs for four reasons.  First, Plaintiff argues that the ALJ's RFC is flawed, is not supported by the evidence, and misapplies the law.  Second, Plaintiff asserts that the ALJ discounts her statements about tremors, by giving an explanation that tremors were not mentioned in several examinations after the amended alleged onset date.  Third, Plaintiff argues that her fibromyalgia, reflex sympathetic dystrophy, and asthma are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).  Fourth, Plaintiff argues that the ALJ's statement in his decision misstates the opinion of the Disability Determination Bureau doctors and the medical expert, Dr. Hutson.

When sequential analysis proceeds beyond Step Three to Steps Four and Five, and ALJ must make a RFC assessment.[1]  That is, an ALJ decides whether an applicant, notwithstanding severe impairment, retains physical and mental ability to perform activities generally required by competitive, remunerative work.  *See* 20 C.F.R. § 404.1545; Social Security Ruling 96-8p, 61 F.R. 34474 (July 2, 1996).  The judge assesses the applicant's physical, mental, and sensory abilities, evaluates how they apply to the applicant's work-related functioning, and finally considers whether the applicant can sustain work-related activities in a work setting on a regular and continuing basis.  *Id.*

The Plaintiff argues that the ALJ's RFC is flawed, is not supported by the evidence, and misapplies the law.  She does not, however, argue that she met or equaled any Listing.  In support of her argument, Plaintiff points to various medical opinions provided by several physicians.

Here, the ALJ found that Plaintiff retained the RFC to perform light work as defined in

---

[1] RFC is defined as "what you can still do despite your limitations."  20 C.F.R. § 416.945(a).

the regulations (Tr. 30).  The ALJ found that the Plaintiff required the following limitations: sitting would require a provision allowing her to alternate sitting and standing at will for five minutes per hour without leaving the work station; occasionally squat, stoop, and bend; avoid work that requires kneeling, crawling, or climbing ladders, ropes, or scaffolds; avoid working at unprotected heights, and around dangerous moving machinery; restricted to work environments relatively free of noxious fumes, gases, respiratory irritants, or extremes of temperature and humidity; and limited to work not requiring more than superficial interaction with the general public, co-workers, and supervisors (Tr. 30).  In addition, the ALJ found that Plaintiff was able to perform her past relevant job and that, even if Plaintiff was unable to return to her past job, she retained the capacity for other jobs existing in significant numbers in the national economy (Tr. 30).

      Careful review of the record indicates that the ALJ considered all medical and other evidence in arriving at his RFC determination.  The ALJ provided a thorough and lengthy review of Plaintiff's medical evidence and provided a detailed explanation of his finding.  The ALJ concluded that Plaintiff essentially had no significant limitations in activities of daily living, social functioning, or concentration, persistence, or pace (Tr. 21).  The ALJ cited Plaintiff's own reports that her limitations were due to her physical problems rather than her mental impairment (Tr. 21).  While the ALJ found that had mild difficulties with depression, Plaintiff had medically determinable impairments the ALJ found were severe (Tr. 21).  However, Plaintiff does not challenge that she met or equaled any Listing.  Instead, Plaintiff argues that the ALJ did not consider the impact of her tremors on her ability to work when the medical record contained "various observations of tremors."

11

In support of her first point of error, Plaintiff relies on medical evidence from 1996 and 2000 regarding her tremors. This evidence is irrelevant because it pre-dates her alleged onset date of July 25, 2002. During the relevant period, only one physician, Dr. Newton, observed tremors on one occasion. None of Plaintiffs other treating physicians observed tremors, and, more importantly, Plaintiff never mentioned tremors. The ALJ was justified in concluding that Plaintiff's tremors did not pose any limitations greater than those found in his RFC determination, and Plaintiff's first and second points of error thus fail.

Plaintiff next asserts that because the ALJ accepted that Plaintiff was severely impaired by fibromyalgia, RSD, and asthma, and these were diagnoses rendered by Dr. Sutton, the ALJ erred in discounting Dr. Sutton's cursory opinion that Plaintiff was limited to only part-time sedentary work. The ALJ afforded Dr. Sutton's opinion little weight because he found her opinion was not supported by the evidence of record (Tr. 26). In arriving at his decision, the ALJ thoroughly and carefully considered the entire record of evidence. The ALJ's analysis was sufficient to fully and fairly develop the record. Because the ALJ supported his decision with substantial evidence, the ALJ was not patently wrong in determining that the opinion of Dr. Sutton was not entitled to controlling weight. Accordingly, Plaintiff's third point of error also fails.

Finally, Plaintiff argues that the ALJ's statement in his decision misstates the opinion of the Disability Determination Bureau doctors and the medical expert, Dr. Hutson. In particular, Plaintiff contends that the ALJ's RFC is flawed because the ALJ found that Plaintiff could perform a range of "light" work, but the state agency doctors and medical expert actually found that Plaintiff could perform less than a full range of light work. The state agency doctors and the

medical expert opined that Plaintiff could occasionally and frequently lift objects weighing up to only 10 pounds. Plaintiff's fourth point of error fails for two reasons. First, the ALJ was not required to rely solely on the opinions of the state agency physicians and the medical expert to formulate his RFC finding. To the contrary, the ALJ carefully considered the opinions, but found that the opinions were "considered and weighed as those of highly qualified physicians who are experts in the evaluation of the medical issues in disability claims..." (Tr. 27). Second, according the Regulations, light work generally involves occasional lifting of objects weighing up to 20 pounds and frequently lifting of objects weighing up to 10 pounds. *See* 20 C.F.R. § 404.1567(b). Even if the ALJ concluded that the opinions of the state agency doctors and medical expert warranted lifting restrictions, the VE identified approximately 6,900 unskilled jobs Plaintiff could perform if she was limited to sedentary work with other limitations.

This Court concludes that the ALJ's determination is supported by substantial record evidence, is not "patently wrong," and will not, therefore, be disturbed. *See Schmidt v. Barnhart*, 395 F.3d 737, 747 (7th Cir. 2005). For all these reasons, Plaintiff's arguments fail.

## IV.   CONCLUSION

Based on the foregoing, the decision of the Commissioner is hereby **AFFIRMED**.

**IT IS SO ORDERED.**

Date: September 26 , 2006                    **S/ ALLEN SHARP**
                                             **ALLEN SHARP, JUDGE**
                                             **UNITED STATES DISTRICT COURT**